UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

WELLINGTON BAKER                          CIVIL ACTION

VERSUS                                    NO: 05-3772

N. BURL CAIN, WARDEN                      SECTION: "R"(2)


## ORDER AND REASONS

Before the Court are petitioner Wellington Baker's objections to the magistrate judge's Report and Recommendation denying his application for a writ of habeas corpus.  For the following reasons, the Court accepts the magistrate judge's Report and Recommendation and DENIES Baker's application for habeas relief.


## I.  FACTUAL BACKGROUND

Petitioner Wellington Baker is a prisoner at the Louisiana State Penitentiary in Angola, Louisiana.  On February 6, 1997, an Orleans Parish grand jury indicted petitioner for the first degree murders of Anthony Moten and Perry Smith.  Petitioner was

eventually tried before a jury and convicted of two counts of second degree murder on October 29, 1999.  On February 29, 2000, the state trial court sentenced the petitioner to life imprisonment without the benefit of parole, probation, or suspension of sentence.

At trial, the state presented evidence that petitioner shot and killed Anthony Moten and Perry Smith on the evening of November 12, 1995.  The Louisiana Fourth Circuit Court of Appeal summarized the facts of the case as follows:

> On November 12, 1995, at 11:55 p.m., George Moten gave a statement to New Orleans Police Officer Michael Mims at police headquarters regarding the shooting deaths of Anthony Moten and Perry Smith. Moten stated that on the evening of the 12th he was exiting the Fisher Housing Project, to go to a grocery store located at the intersection of Whitney and Newton, when he saw the defendant Wellington Baker, whom he knew as Willie Dirt. Shortly before George Moten departed, Anthony Moten and Perry Smith left George Moten to go to a video store.  When Moten returned from the store, he stated that he saw Baker leaning against a building with an AK-47 assault rifle at his side.  Moten then asked Baker what he was doing, and he replied, "I'm going to kill all these mother f---ers."  Moten stated he then told Baker to put the gun away, but Baker was insistent that he was going to "show them."  Moten then asked Baker to let him leave, and Baker replied, "I respect you George.  You're all right."  Moten then walked away.  Moten stated he did not enter the apartment he was returning to , but remained outside looking at Baker.  Moten said he then heard Baker say, "I'm Willie Dirt" to which Perry Smith, replied, "what's wrong with you Willie?"  Moten stated he heard the

rifle, and saw Baker aiming the gun at Smith.  Moten
screamed, "that's my family man," and then Baker
began shooting at Smith and Anthony Moten.  According
to George Moten, Smith and Anthony Moten began
running around a staircase trying to get away from
Baker who continued to shoot at them.  George Moten
said Smith fell down, and Baker stood over him
shooting him as he lay on the ground.  Moten stated
Anthony Moten was behind the staircase, so he was
unable to see Anthony being shot.  Moten said Baker
then ran off still holding the machine gun. After
giving his statement to the police Moten then
identified Baker in a photographic line-up.

     In his motion hearing and trial testimony,
Moten's recollection of the events on November 12,
1995, varied from his statement given to Officer
Mims.  At the motion hearing, Moten testified that
when he saw Baker with the gun he asked why he was
standing there with it.  However, Baker did not
reply, instead he stood there "looking crazy."  Moten
then testified he told Baker to put the gun away
because the police would kill him on the spot if they
saw him.  At trial, Moten testified that when he
approached Baker, he asked him "what's up? Did you
and your family get into it?"  Baker then replied,
"something like that."  Moten testified Baker then
stepped away from the pipe he was leaning on, and
that was when he saw the AK-47.  Moten said he then
told Baker, "If the police see you they are going to
kill you," and Baker replied by asking "where they
at?"  Moten said he then left Baker standing there.
Moten testified he returned to his girlfriend's
apartment, but only momentarily because he realized
that Smith and Anthony had to walk past Baker on
their return from the video store.  The remainder of
Moten's testimony is consistent, but he did not
testify at trial that he saw Baker stand over Smith
and shoot him as he lay on the ground.
                    [* * *]

     Asalee Baker, Wellington Baker's mother,
testified that on the night of November 12th she and
her other children along with her nephew Raymond

3

Minor, sat around her apartment talking and laughing. She stated she got a phone call from her son, Wellington, asking if someone could give him a ride because he had just been in a car accident.  She then testified that she asked her nephew to go and get him.

Raymond Minor, Baker's cousin, testified that on the night of November 12, 1995, he transported Baker to the home of Wanda Fleming.  Minor stated Baker called and asked for a ride after the car he was driving was damaged in a car accident that same evening. Minor further testified that when he arrived at the scene of the car accident the car Baker had been driving was being connected to a tow truck.  He then dropped Baker off at Wanda Fleming's home and left him there.

Wanda Fleming, a friend of Baker, testified that she could not recall what time she had gone to be that night, but when she turned over she realized Baker was in bed with her.  Upon realizing Baker had joined her in bed, Fleming stated, they had intercourse, and she went back to sleep.  She testified when she woke the next morning Baker was still in her bed, and that he remained at her home for most of the day.

Wellington Baker corroborated the testimony of the defense witnesses by testifying that he was in a car accident and that Minor gave him a ride to Fleming's home where he stayed until late the following evening.  Baker testified that he learned he was wanted for the murders of Smith and Moten as he watched the news, and that he left Fleming's home that night, and a few hours later purchased a bus ticket to Detroit where he remained until his arrest.

*State v. Baker*, 801 So. 2d 1196, 1197-1200 (La. Ct. App. 2001).


## II.  PROCEDURAL HISTORY

After his conviction in state court, petitioner appealed his

conviction and sentence on the grounds that (1) the trial court erred in denying his motion for mistrial based on the state's failure to produce George Moten's statement made at the motion hearing until after the jury had been selected, and (2) the trial court erred in denying his motion for a new trial based on the untimely disclosure of Moten's statement, new evidence that Moten may not have witnessed the shootings, and new evidence that another witness, Alveris Ruffin, could have testified to a different sequence of events than those described by Moten at trial. *Baker*, 801 So. 2d at 1200-01. The Louisiana Fourth Circuit Court of Appeal affirmed petitioner's conviction, finding no merit to his claims. *See id*. at 1203. The Louisiana Supreme Court subsequently denied petitioner's application for a writ of certiorari without reasons on January 24, 2003. *See State v. Baker*, 836 So. 2d 34 (La. 2003).

According to the trial court's interpretation of petitioner's claim, petitioner then filed a motion for post-conviction relief alleging that the process of selecting grand jury forepersons in Orleans Parish was racially discriminatory and therefore violated the equal protection clause. (R. Doc. 3). On April 13, 2004, the trial court denied petitioner's motion by finding that such claim was procedurally barred because

5

petitioner had failed to file a timely motion to quash the
indictment.  (Id.)  Both the Louisiana Fourth Circuit Court of
Appeal[1] and the Louisiana Supreme Court later denied petitioner's
writ applications.  *State ex rel. Baker v. State*, 904 So. 2d 688
(La. 2005).

On November 1, 2005, Baker filed a petition for federal
habeas corpus relief in this Court pursuant to 28 U.S.C. § 2254.
In his petition, Baker seeks relief on the following grounds:
(1) the trial court erred in denying his motion for a mistrial
based on the state's failure to produce George Moten's statement
made at the motion hearing until after the jury had been
selected, (2) the trial court erred in denying his motion for a
new trial based on the untimely disclosure of Moten's statement,
new evidence that Moten may not have witnessed the shootings, and
new evidence that another witness, Alveris Ruffin, could have
testified to a different sequence of events than those described
by Moten at trial, and (3) the process of selecting grand jury
forepersons in Orleans Parish was racially discriminatory and
therefore violated the equal protection clause.

No response to this petition was filed by the Orleans Parish

---

[1] Baker did not provide the Court with a copy of this writ
application, No. 2004-K-1243.

District Attorney's Office despite the numerous motions for extension of time that it was granted before the magistrate judge issued his Report and Recommendation.  Because enough of the state court record had been provided to permit review of Baker's petition, the magistrate judge issued his Report and Recommendation on June 20, 2006, wherein the magistrate judge recommended that petitioner's claims be dismissed with prejudice. On November 1, 2006, the Court remanded the matter to the magistrate judge to address the petitioner's claim under *State v. Dilosa*, 848 So. 2d 546 (La. 2003).  The magistrate judge issued a supplemental Report and Recommendation on that issue on January 17, 2007.  Presently before the Court are petitioner's objections to both of the magistrate judge's Reports.

## III. DISCUSSION

### A.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 prohibits a federal habeas court from granting a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court unless the state court adjudication resulted in a decision that (1) was contrary to, or involved an unreasonable application of clearly established

8

federal law as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d).  A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision involves an unreasonable application of federal law if the state court unreasonably applies the correct governing legal principle to the facts of the prisoner's case. *See Williams*, 529 U.S. at 412; *Hill*, 210 F.3d at 485.  The state court's findings of fact are entitled to a presumption of correctness, and they can be rebutted only by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).

   **B.   Analysis**

        1.   *Denial of the Motion for Mistrial*

     Petitioner first alleges that the trial court erred in denying his motion for a mistrial because of the state's failure to disclose a statement made by witness George Moten until after

jury selection had concluded.  Petitioner argues that such delay impacted his counsel's strategy in jury selection and therefore hindered his ability to properly challenge Moten's credibility.

At trial, petitioner's counsel argued that the description of a cold-blooded ambush made by Moten shortly after the incident conflicted with his motion hearing testimony which described petitioner as a crazy man on the night of the shooting.  As a result of the state's delay in disclosing Moten's statement, counsel argued that he was unprepared to defend petitioner in light of this new statement.  Counsel further alleged that he had selected the jury in anticipation of presenting another defense and was accordingly prejudiced by the state's delay.  The trial court denied the motion.

On direct appeal, petitioner asserted a nearly identical argument that the Louisiana Fourth Circuit likewise rejected. *See Baker*, 801 So. 2d at 1196 (La. Ct. App. 2001).  In its decision, the court denied relief under *Brady v. Maryland*, 373 U.S. 83 (1963), and held that "the failure of the State to turn [the evidence] over earlier does not create a reasonable probability sufficient to undermine the confidence of the outcome." *Baker*, 801 So. 2d at 1201.  The court found that there lacked a reasonable probability that the outcome of the trial

10

would have been different because the statement was produced
prior to trial and the court delayed receiving Moten's testimony
to allow the defense counsel to "digest" the statement.  *Id*. at
1200-01.  The court reasoned that defense counsel was able to
utilize this statement at trial to point out the inconsistencies
in Moten's testimony which might have accounted for petitioner
being convicted of a lesser offense – second degree murder rather
than the first degree murder charge the state originally sought.
*Id*. at 1201.

Under *Brady*, the prosecution's suppression of evidence
favorable to the accused violates due process if such evidence is
material to either guilt or punishment.  *Banks v. Dretke*, 540
U.S. 668, 691 (2004) (quoting *Brady*, 373 U.S. at 87).  To prevail
on his *Brady* claim, petitioner must establish that (1) evidence
was suppressed by the state, (2) the evidence at issue is
favorable to the accused either because it is exculpatory or
impeaching, and (3) prejudice ensued.  *Banks*, 540 U.S. at 691
(citing *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999)).

Petitioner's *Brady* claim fails because he has failed to
establish that the state suppressed evidence.  *Brady* claims
involve "the discovery, *after trial* of information which had been
known to the prosecution but unknown to the defense."  *Lawrence*

11

*v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994) (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)) (emphasis added). "When information is fully available to a defendant at the time of trial . . ., the defendant has no *Brady* claim." *United States v. Brown*, 628 F.2d 471, 473 (5th Cir. 1980).  Moreover, "[i]f the defendant received the material in time to put it to effective use at trial, his conviction should not be reversed simply because it was not disclosed as early as it might have, and indeed, should have been." *United States v. McKinney*, 758 F.2d 1036, 1049-50 (5th Cir. 1985).

Here, petitioner's counsel was given Moten's statement prior to eliciting testimony from him.  As the magistrate judge correctly concluded, Moten's statement was known and disclosed at the time of the trial and defense counsel was able to use the statement for impeachment purposes therein.  The transcripts provided by petitioner demonstrate that counsel used Moten's conflicting descriptions of petitioner on the night of the murder to cast some doubt on Moten's credibility.  Counsel successfully elicited testimony from Moten that there was something bizarre and different about petitioner that night and that his mental state was not normal.

Because the statement was available to petitioner at the

time of trial and his counsel utilized it to impeach Moten,
petitioner's conviction cannot be reversed.  *See McKinney*, 758
F.2d at 1050 (holding that the prosecution did not suppress
evidence where *Brady* materials were disclosed during the course
of the trial); *see also U.S. v. Higgs*, 713 F.2d 39, 44 (3d Cir.
1983) (holding that where *Brady* material merely have impeachment
value, disclosure on the day the witness testifies satisfies due
process), *cert. denied*, 464 U.S. 1048 (1983).  The record fails
to show that petitioner was denied a fair trial as a result of
the state's late disclosure of the statement.  The Court,
therefore, agrees with the magistrate judge's Report that
petitioner is not entitled to relief because the state courts'
failure to grant relief was not contrary to or an unreasonable
application of Supreme Court precedent.  Although petitioner did
submit objections to the magistrate's Report, his objections
merely reiterate his earlier argument and therefore do not
warrant further consideration by the Court.  Accordingly,
petitioner's *Brady* claim is dismissed.

     2.   *Denial of the Motion for New Trial*

Petitioner next asserts that the state trial court erred in
denying his motion for a new trial.  In that motion, petitioner's
counsel argued that newly discovered evidence would demonstrate

13

that Moten, contrary to his own assertions, did not actually see the shootings.  Counsel further argued that the interests of justice demanded a new trial given the state's untimely production of Moten's statement.  At the hearing on the motion for a new trial, petitioner's counsel presented the testimony of Moten's girlfriend and mother to establish that Moten could not have actually seen the shooting.  Counsel additionally offered the testimony of a new witness, Alveris Ruffin, who testified that she saw the three men arguing just before the shootings occurred. Counsel argued that such newly discovered testimony could have further impeached Moten's testimony on cross-examination.  The trial court denied the motion for a new trial.

Petitioner again raised this issue on direct appeal to the Louisiana Fourth Circuit, citing Louisiana Code of Criminal Procedure article 851.[2]  The court rejected this claim and held

---

[2] La. Code Crim. P. Art. 851 states that:

> The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
> The court, on motion of the defendant, shall grant a new trial whenever:
> (1) The verdict is contrary to the law and the evidence;
> (2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error;

14

that the trial court had not abused its discretion in denying

petitioner's motion for a new trial. *Baker*, 801 So. 2d at 1203.

In affirming petitioner's conviction and sentence, the court

expressly agreed with the trial court's findings that the

evidence of defendant's guilt was "overwhelming," that petitioner

received a fair trial, and that the new evidence did nothing more

than further establish petitioner's guilt. *Id.* at 1202-03.

Based upon this evidence, the magistrate judge recommended

dismissing petitioner's claim with prejudice.  In his objections

to this Report, petitioner reasserts that he is entitled to a new

trial pursuant to article 851 subsections (2), (3), and (5).

This claim is not proper for federal habeas corpus review. The

state trial court relied exclusively upon state law in finding

---

(3) New and material evidence that, notwithstanding
the exercise of reasonable diligence by the
defendant, was not discovered before or during the
trial, is available, and if the evidence had been
introduced at the trial it would probably have
changed the verdict or judgment of guilty;
(4) The defendant has discovered, since the verdict
or judgment of guilty, a prejudicial error or defect
in the proceedings that,
notwithstanding the exercise of reasonable diligence
by the defendant, was not discovered before the
verdict or judgment; or
(5) The court is of the opinion that the ends of
justice would be served by the granting of a new
trial, although the defendant may not be entitled to
a new trial as a matter of strict legal right.

15

that petitioner was not entitled to a new trial.  Federal courts "will not review a state court's interpretation of its own law in a federal habeas corpus proceeding." *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991) (holding that a state court's denial of a motion for a new trial under La. Code Crim. P. Art. 851 was not reviewable by a federal court on habeas review); *see also Bradshaw v. Richey*, 546 U.S. 74, 126 S. Ct. 602, 604 (2005) (stating that "[w]e have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

Petitioner has likewise failed to demonstrate that the state court's denial of his motion for a new trial constituted a violation of any constitutional right.  *See Dickerson,* 932 F.2d at 1145.  To prevail on a request for relief based upon newly discovered evidence, the petitioner must establish that (1) the evidence is newly discovered and was unknown to the defendant at the time of trial, (2) the defendant's failure to detect the evidence was not because of a lack of due diligence, (3) the evidence is material, not merely cumulative or impeaching, and (4) the evidence would probably produce an acquittal at trial. *Lucas v. Johnson*, 132 F.3d 1069, 1076 (5th Cir. 1998).

16

Here, petitioner asserts that the newly discovered evidence
"consisted of the testimony of a witness, Kim Martin Joseph, who
completely and utterly refuted the testimony by the state's only
witness against [Mr. Baker], George Moten."  (R. Doc. 3-1, at 4).
Petitioner mentions Ms. Joseph's testimony for the first time in
this federal habeas corpus proceeding, but fails to explain how
her testimony would in any way refute Moten's testimony offered
at trial.

It remains well-settled that "the existence merely of newly
discovered evidence relevant to the guilt of a state prisoner is
not a ground for relief on federal habeas corpus." *Lucas,* 132
F.3d at 1074.  Moreover, [e]vidence which merely discredits or
impeaches a witness's testimony does not justify a new trial."
*Unites States v. Pena*, 949 F.2d 751, 758 (5th Cir. 1991).  Here,
as noted above, petitioner claims that Ms. Joseph's testimony
would be offered to refute the testimony of Moten.  Under *Pena*,
this is an improper basis for obtaining a new trial.  *See id.;*
*see also United States v. Holmes*, 406 F.3d 337, 359-60 (5th Cir.
2005) (holding that newly discovered evidence was merely
impeachment related and therefore insufficient to entitle the
petitioner to a new trial).  Petitioner therefore has failed to
demonstrate that he is entitled to a new trial especially given

17

the "unusually stringent substantive test" that governs motions for a new trial. *Id.* at 359 (quoting *United States v. Ugalde*, 861 F.2d 802, 808 (5th Cir. 1988).

Accordingly, the Court finds that petitioner's claim regarding his motion for a new trial should be dismissed with prejudice.

### 3. *Challenge to the Indictment*

The magistrate judge initially interpreted petitioner's claim to be that his constitutional rights were violated because of racial discrimination in the selection process for the grand jury foreperson. However, petitioner clarified his claim in his objections, asserting that his indictment should have been dismissed because his grand jury was selected pursuant to Louisiana Code of Criminal Procedure article 413(C),[3] which was later declared unconstitutional by the Louisiana Supreme Court. *See Dilosa*, 848 So. 2d at 546. After reviewing petitioner's claim in light of *Dilosa*, the magistrate judge concluded that petitioner procedurally defaulted his claim challenging the grand

---

[3] La. C. Cr. P. Art. 413(C) formerly provided that "[i]n the parish of Orleans, the court shall select twelve persons plus a first and second alternate for a total of fourteen persons from the grand jury venire, who shall constitute the grand jury.  The court shall thereupon select one of the jurors to serve as foreman."

jury by not filing a pretrial motion to quash.  Even if it were
not procedurally barred, the magistrate judge found that
petitioner's claim that article 413(C) violated the Louisiana
constitution is not a proper ground for federal habeas relief.
The Court agrees with the magistrate judge's determination and
rejects petitioner's objections for the following reasons.

A federal habeas court will not consider the merits of a
federal claim when the state courts denied the claim on the basis
of a state procedural rule that is adequate to support the
decision and independent of the merits of the claim.  *See, e.g.*,
*Dretke v. Haley*, 541 U.S. 386, 392 (2004) (noting that "federal
courts will not disturb state court judgments based on adequate
and independent state law procedural grounds").  To be an
adequate ground for denying relief, the state procedural rule
must be strictly or regularly applied to similar claims.  *See*
*Johnson v. Puckett*, 176 F.3d 809, 824 (5th Cir. 1999).  A
petitioner can overcome a procedural default only by showing
either cause for the default and actual prejudice or that the
application of the state procedural bar would result in a
fundamental miscarriage of justice.  *See Pickney v. Cain,* 337
F.3d 542, 545 (5th Cir. 2003) (quoting *Smith v. Johnson*, 216 F.3d
521, 524 (5th Cir. 2000)).

19

To determine whether the state courts denied relief based on an adequate and independent state procedural rule, courts look to the last reasoned state court decision to see whether it applied a procedural bar or addressed the merits of the claim.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) (noting that "where, as here, the last reasoned opinion of the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits").

Here, petitioner filed a motion for post-conviction relief alleging that the process of selecting grand jury forepersons in Orleans Parish was racially discriminatory and therefore violated the equal protection clause.  The trial court denied the application by holding that the claim was procedurally barred because petitioner failed to raise his objections in a pretrial motion to quash the indictment.  According to the trial court, petitioner did not preserve his claims because he failed to file such a motion as mandated under Louisiana Code of Criminal Procedure articles 533(1)[4] and 535(D).[5]  The record indicates

---

[4] La. C. Cr. P. Art. 533(1) provides that "[a] motion to quash an indictment by a grand jury may also be based on one or more of the following grounds:  (1) The manner of selection of the general venire, the grand jury venire, or the grand jury was illegal."

20

that petitioner's counsel did file a motion to quash the

indictment.  But this motion was based exclusively on the alleged

constitutional deficiencies in the grand jury selection process

for the death penalty component of the first degree murder

charges that petitioner faced.  This motion did not explicitly

address any issues pertaining to article 413(C).

The Court finds that the bar against review of these claims

when no motion to quash has been filed is consistently applied in

Louisiana state courts under their own procedural rules.  The

record in this case clearly demonstrates that petitioner never

raised this claim at trial.  As the Louisiana Supreme Court has

held:

> *All* equal protection claims arising out of the selection or
> composition of grand juries in Louisiana remain subject to
> this state's procedural requirements.  Counsel must assert
> the equal protection claim in a pre-trial motion to quash or
> waive any complaint in that regard.

*Deloch v. Whitley*, 684 So. 2d 349 (La. 1996) (emphasis in

original) (internal citations omitted).  Under Louisiana law,

therefore, challenges to the selection of the grand jury are

deemed waived if the defendant does not move to quash the

---

[5] La. C. Cr. P. Art. 535(D) provides that . . . "[t]he grounds
for a motion to quash under Paragraphs B and C are waived unless
a motion to quash is filed in conformity with those provisions."

indictment on that basis at trial.  *See id.* at 349-50; *see also Williams v. Cain*, 125 F.3d 269, 274 (5th Cir. 1997) ("It is indisputable that under Louisiana law, a challenge to the legality of the grand jury venire must be made by a pretrial motion to quash.")  As a result, petitioner's claims were subject to dismissal in the state courts on the basis of this procedural default.  Moreover, the Fifth Circuit has held that this rule constitutes an independent and adequate state procedural bar. *See id.* at 274-76.

Because this rule is based on adequate and independent state law procedural grounds, the Court does not consider the merits of petitioner's grand jury claims unless he can show cause for his default along with actual prejudice, or that the court's failure to review the defaulted claim would result in a fundamental miscarriage of justice.  *See Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997).  To demonstrate the necessary cause for a procedural default, a petitioner must show some objective factor that impeded defense counsel's efforts to comply with the state's procedural requirements.  *Dowthitt v.* Johnson, 230 F.3d 733, 752 (5th Cir. 2000) (quoting *Meanes v. Johnson*, 138 F.3d 1007, 1011 (5th Cir. 1999).  But "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to

raise the claim despite recognizing it, does not constitute cause for a procedural default."  Murray *v. Carrier*, 477 U.S. 478, 486 (1986).

Here, after reviewing the record, the Court agrees with the magistrate judge's conclusion that petitioner has not offered any explanation or objective factor which would have prevented him from complying with Louisiana's procedural rules.  Petitioner has likewise failed to offer any such evidence in his objections to the magistrate judge's Report and Recommendation.  Accordingly, the Court need not determine whether any actual prejudice resulted because petitioner has failed to show any objective reason for his procedural default.  *See Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (noting that "the failure to show cause is fatal to the invocation of the cause and prejudice exception, without regard to whether prejudice is shown") (internal quotations omitted).

Not only has petitioner failed to show cause, he likewise has failed to demonstrate that the application of Louisiana's procedural rule would result in a fundamental miscarriage of justice.  *See Glover*, 128 F.3d at 902.  To establish a fundamental miscarriage of justice, petitioner must show that he is actually innocent, *i.e.*, make a "colorable showing of

23

innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986).
Petitioner can only meet this burden by making "a persuasive
showing that he is actually innocent of the charges against him."
*Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001).

Here, the Court again agrees with the magistrate judge's
conclusion that petitioner has not presented, nor does the record
contain, any facts which suggest that petitioner is in fact
innocent.  To the contrary, petitioner merely challenges the
procedural defaults in the underlying criminal proceedings.
Thus, the Court finds that petitioner has failed to overcome the
procedural bar applicable to his grand jury challenge and
therefore the application of this rule would not result in a
fundamental miscarriage of justice.

Moreover, as the magistrate judge found in his Report, even
if petitioner's claim were not procedurally barred, it would not
be an appropriate ground for federal habeas relief.  In *Dilosa*,
the Louisiana Supreme Court found that laws governing the
selection of the grand jury venire and foreperson in Orleans
Parish violated the Louisiana constitution.  The fact that those
provisions violated state law is of no moment in a federal habeas
proceeding.  Federal habeas relief is intended only to remedy
violations of the Constitution and laws of the United States;

24

mere violations of state law are not sufficient grounds.  28
U.S.C. § 2254; *Engle v. Isaac*, 456 U.S. 107, 119 (1982).  As
*Dilosa* addressed only state constitutional rights, he is not
entitled to federal habeas relief on this claim.  *See Parker v.
Cain*, 445 F. Supp. 2d 685, 697 n.23 (E.D. La. 2006) (finding that
petitioner's claim under article 413(C) was not a proper ground
for federal relief).

       4.   *The State's Failure to Respond*

     Petitioner contends in his objections that the magistrate
judge erred by dismissing his petition without receiving any
response from the Orleans Parish District Attorney and without
obtaining the complete record.  The Court, however, agrees with
the magistrate judge's determination that sufficient evidence
existed in the record to allow a thorough review of petitioner's
claims.

     A court must dismiss a habeas petition when "it plainly
appears from the petition and any attached exhibits that the
petitioner is not entitled to relief in the district court."
Rule 4, Rules Governing Section 2254 Cases.  As the First Circuit
recently stated, "[w]here, as here, a petitioner's claims render
such a [Rule 4] disposition appropriate, a federal habeas court
need not examine the complete trial transcript."  *Huenefeld v.*

*Maloney*, 2 Fed. Appx. 54, 60 (1st Cir. 2001).  The Court finds that a Rule 4 disposition was appropriate in this case because each of petitioner's claims could appropriately be resolved by reference to the existing record.  Petitioner has failed to point to any issue which required the Court to go beyond the record at hand.  *See id.* at 61.

Moreover, the Court finds that petitioner's arguments are purely legal in nature and therefore can be appropriately reviewed solely based on the record and applicable law.  *See Dillard v. Blackburn*, 780 F.2d 509, 515 (5th Cir. 1986) (noting that "[m]any habeas cases can be resolved on issues that are fully determinable from the record and the law"); *see also Davis v. Jones*, 2006 WL 1540114, *1 (E.D. La. 2006) (noting that "[t]he Court finds that Petitioner's argument is legal in nature, and, therefore, does not find a need for the missing portions of the record before issuing its judgment").  Accordingly, the Court finds that petitioner's objection to the magistrate's Report based on the state's failure to respond lacks merit.

26

**IV.   CONCLUSION**

For the reasons stated above, petitioner's habeas petition is DISMISSED with prejudice.

New Orleans, Louisiana, this <u>26th</u> day of April, 2007.

_____

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE